**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MUBASHER AHMED; and | ) | |
| HUMA MUBASHER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. |
| | ) | |
| AUTOTRADER.COM, INC.; LEE MCCOY; | ) | |
| DODGE OF ANTIOCH, INC.; CAPITAL ONE, | ) | |
| N.A., | ) | |
| | ) | |
| Defendants. | ) | JURY DEMANDED |

## COMPLAINT

### Parties

1.      Plaintiff Mubasher Ahmed is an individual who resides in this district.

2.      Plaintiff Huma Mubasher is an individual who resides in this district.

3.      Defendant AutoTrader.com, Inc. is a Delaware corporation registered to conduct business in Illinois whose registered agent is Illinois Corporation Service C, 801 Adlai Stevenson Dr., Springfield, Illinois, 62703.

4.      AutoTrader owns the intellectual property known as MakeMyDeal, a website with the home page makemydeal.com. AutoTrader is liable for the actions of MakeMyDeal.

5.      MakeMyDeal serves as an online platform to facilitate automobile purchases, representing to potential contracting dealerships that it can yield higher conversion rates.

6.      Dodge of Antioch, Inc., d/b/a Antioch Chrysler Dodge Jeep Ram ("Antioch Dodge"), is an Illinois corporation that operates an automobile dealership located at 105 IL-173, Antioch, IL  60002.

1

7.      Antioch Dodge contracts with MakeMyDeal to facilitate automobile purchases.

8.      MakeMyDeal facilitated Plaintiffs' automobile purchase from Antioch Dodge.

9.      Lee McCoy is an individual and, upon information and belief, a resident of this district.  Lee McCoy was the individual affiliated with Antioch Dodge who negotiated and agreed to terms with Plaintiffs over the MakeMyDeal platform.

10.     Capital One, N.A., is a national banking association with its headquarters located at 1680 Capital One Drive, Mclean, VA, 22102.  Capital One Auto Finance ("Capital One") is a division of Capital One, N.A. that originates, purchases, and services automobile loans.

**Jurisdiction and Venue**

11.     This Court has subject matter jurisdiction over Plaintiffs' TILA, FCRA and ECOA claims pursuant to 28 U.S.C. § 1331 because such claims arise under the laws of the United States, specifically 15 U.S.C. § 1601 *et seq.,* 15 U.S.C. § 1681 *et seq.,* and 15 U.S.C. § 1691 *et seq*.

12.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 given the interrelated nature of Plaintiffs' claims.

13.     This Court has personal jurisdiction over Defendants because they each do business in the State of Illinois and the wrongful acts and practices alleged in this Complaint were committed in Illinois.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiffs reside in this district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here.

**Facts**

15.　　In February, 2016, Plaintiffs were in the market to purchase a new automobile.

16.　　Plaintiffs do not speak English as their first language and are neither formally educated nor sophisticated automobile consumers.

17.　　Upon visiting the website of Antioch Dodge, Plaintiff Mubasher Ahmed identified a 2013 Dodge Charger ("Charger") for $15,977 that he was interested in potentially purchasing.

18.　　On the Antioch Dodge website was a link, application and/or "widget" that allowed a user to use the MakeMyDeal platform to submit an offer to purchase to the dealership.

19.　　Mubasher Ahmed submitted an offer to purchase the Charger for $15,000 with a down payment of $3,000 and the remainder financed at 14.90%. The estimated payment range was represented to be $354 to $404 per month.

20.　　On February 23, 2016, Lee McCoy and Antioch Dodge accepted the offer. A copy of the deal chat memorializing and email memorializing the terms is attached as Exhibit A.

21.　　The certificate sent by MakeMyDeal states that "[t]his deal is being held specifically for Mubasher Ahmed." Exhibit B.

22.　　MakeMyDeal represents to consumers that the upon the acceptance of a deal, "[y]ou will be sent instructions from the dealer to finalize the purchase of the vehicle at the dealership and complete the necessary paperwork….Please note all deals are subject to credit approval, trade-in inspection, registration, and dealership fees, and expiration." Exhibit C.

23.　　Indeed, the certificate states:

"Next Steps:

3

- Print out your certificate

- Submit your Credit Application

- Bring your certificate to the dealership before the deal expires.

- Look for Lee McCoy at the dealership, finalize your paperwork, and drive away in your new car!

24.     In multiple places, the certificate features the Antioch Dodge logo.

25.     Furthermore, the certificate features an itemization of the deal that distinguishes between estimated amounts and non-estimated amounts. *See* Exhibit B.

26.     To the least sophisticated consumer, the MakeMyDeal website, dealer chat, and certificate give the impression that a binding contract for the purchase of an automobile was made in exchange for the reservation of the automobile so long as the consumer follows the enumerated steps.

27.     When Plaintiffs went to the dealership to seek Lee McCoy, however, a salesman named Brandon Carroll interjected himself, said that he was aware of the online deal being accepted, and offered to take Plaintiffs in a test drive of the vehicle.

28.     After test driving the vehicle, Plaintiffs went into an office where Mr Carroll asked them about paying $3,500 as a down payment on the price of $15,000.  Mr. Carroll went to his finance manager, came back, and asked them to pay the $3,500.  The down payment was cashed at 12:48 PM.  Exhibit D.

29.     The remainder of the deal paperwork was not completed for another twenty minutes.  Mr. Carroll represented to Plaintiffs that they could quickly sign the papers and be out of the dealership.

30.     The finance manager, Moses Cano, quickly had Plaintiffs sign the paperwork and told them they were all set.

31.     When Plaintiff Mubasher Ahmed called his insurance company, he noticed that the dealership charged him $18,901 as the base price instead of the $15,000 as agreed.

32.     Believing this was a simple error in the paperwork, Mubasher called the dealership, but was given the run-around.  When he finally spoke to Brandon Carroll, Mr. Carroll denied knowing anything about the situation even though Mr. Carroll had previously indicated he knew that Plaintiffs had agreed to a $15,000 purchase price.

33.     Later that day, Lee McCoy called and said that the overall total included interest and that was why it was higher.

34.     Upon speaking with a friend who could better explain the paperwork, Mr. Mubasher came to learn that the dealership was blatantly lying to him and had defrauded him.

35.     On March 1, 2016, Mubasher Ahmed returned to the dealership to inquire about the price difference.  In response, Brandon Carroll filled out the sheet attached as Exhibit E whereby they again misrepresented the transaction in a blatant fraud.

36.     For example, on the attached sheet, Mr. Carroll purported to start with the base price of $15,000 upon which he added assorted fees to arrive at a figure of $18,120, which is still below the $18,901 cash price that Antioch Dodge fraudulently listed on the Bill of Sale and Retail Installment Contract prior to adding various fees.

37.     Additionally, Mr. Carroll represented to Plaintiffs that the amount was higher because his interest rate would have been 22-24%, but the dealership paid $2,866.00 to bring the interest rate down.

5

38.     Such information was never discussed or represented to Plaintiffs prior to payment of their deposit, nor was such information represented in any of the paperwork hastily given to Plaintiffs after they had clearly agreed to terms on the vehicle and paid their deposit.

39.     Although Plaintiffs "made a deal" for the purchase of an automobile for $15,000, subsequently confirmed by Lee McCoy, they now owe considerably more on the vehicle than what was disclosed to them at or before they paid their down payment on the vehicle.

**40.**     The Retail Installment Contract has been assigned to Capital One.

## COUNT I
*Reformation of Contract*
*Against Capital One*

41.     Plaintiffs incorporate and reallege paragraphs 1 – 40, above, as if fully set forth herein.

42.     Upon information and belief, Capital One still holds Plaintiffs' Retail Installment Contract.

43.     The terms of Plaintiffs' Bill of Sale and Retail Installment Contract do not reflect the negotiated agreement between Plaintiffs and Antioch Dodge.

44.     By accepting the offer presented on the MakeMyDeal website, Lee McCoy and Antioch Dodge agreed to be bound by the base price offer subject to the completion of the "next steps" represented on the MakeMyDeal certificate.

45.     At an absolute minimum, the parties were bound to a sale at the negotiated price of $15,000 when Antioch Dodge accepted Plaintiffs' deposit on the vehicle while both parties had confirmed the $15,000 agreed price.

46.     Plaintiffs' Bill of Sale and Retail Installment Contract must be equitably reformed to reflect the parties' negotiated agreement, bound by Plaintiffs' performance of coming to the dealership, asking for Lee McCoy, and tendering their deposit.

47.     Plaintiffs are further entitled to a re-application of all payments already made from the origin of the account and a credit on their automobile loan account for any overpayments.

WHEREFORE, Plaintiffs pray that this Court enter judgment against defendants and for the following relief:

a)     Equitable reformation of the subject automobile loan contract *ab initio*;

b)     An accounting of amounts already paid on the reformed contract and proper application of any overpayments; and

c)     For all such other relief that is just and proper.

## COUNT II
*Violations of the Truth in Lending Act*
*Against Antioch Dodge and Lee McCoy*

48.     Plaintiffs incorporate and reallege paragraphs 1 – 47, above, as if fully set forth herein.

49.     The Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA") is designed to provide for a meaningful disclosure of credit terms and protect against inaccurate and unfair credit billing practices.  15 U.S.C. § 1601(a).

50.     Antioch Dodge is a "creditor" under TILA.  15 U.S.C. § 1602(g); 12 CFR § 1026.2(a)(17).

51.     TILA's implementing regulation, Regulation Z, requires that a creditor on a closed-end transaction make disclosures in writing in a form the consumer may keep prior to the consummation of a transaction.  12 CFR § 1026.17(a)(1)-(2).

52.     Moreover, Regulation Z requires that any "early disclosures" – i.e., those disclosures made before consummation of a loan based upon estimates – be amended with a disclosure of the changed terms, including changed finance amounts.  12 CFR § 1026.17(f).

53.     Among the items to be disclosed to the consumer include an itemization of the amount financed, the finance charge, the annual percentage rate, and the total sale price.  12 CFR § 1026.18.

54.     TILA provides for criminal liability for any individual who willfully and knowingly gives false or inaccurate information or fails to provide information required to be disclosed or otherwise fails to comply with any requirement imposed by TILA.  15 U.S.C. § 1611.

55.     Antioch Dodge failed to provide Plaintiffs with appropriate TILA disclosure prior to consummation of the loan transaction, i.e., the tender of the deposit.

56.     In the alternative, Antioch Dodge failed to provide Plaintiffs with a corrected TILA disclosure changing the terms of any early disclosures made on the MakeMyDeal platform.

57.     Furthermore, Antioch Dodge misrepresented the base price and all amounts due on the TILA disclosure because Plaintiffs in fact had agreed to purchase the vehicle for a $15,000 base price.

58.     Antioch Dodge is liable criminally for willfully and knowingly failing to disclose material terms, willfully and knowingly disclosing misleading terms, and willfully misleading the consumer about the amounts due and the calculations for the amounts due.

59.     Lee McCoy is liable criminally as an individual for willfully and knowingly failing to disclose material terms, willfully and knowingly disclosing misleading terms, and willfully misleading the consumer about the amounts due and the calculations for the amounts due.

60.     Further, TILA provides for a civil cause of action against creditors who fail to comply with its disclosure provisions for actual damages, statutory damages, costs, and attorney's fees.

WHEREFORE, Plaintiffs pray that this Court enter judgment against defendants and for the following relief:

        a)     Statutory damages pursuant to 15 U.S.C. § 1640(a)(2);

        b)     Actual damages to be proven at trial pursuant to 15 U.S.C. § 1640(a)(1);

        c)     Costs and reasonable attorney's fees; and

        d)     For all such other relief that is just and proper.

### COUNT III
*Violations of the Fair Credit Reporting Act*
*Against Antioch Dodge and Capital One*

61.     Plaintiffs incorporate and reallege paragraphs 1 – 60, above, as if fully set forth herein.

62.     The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* governs the appropriate procedures and uses of credit reports.

9

63.     Upon information and belief, Antioch Dodge and/or Capital One Auto Finance conducted a review of Plaintiffs' credit at the dealership after the deposit had been paid causing the increases in amounts and the potential APR increase represented by Brandon Carroll.

64.     The increases in the amounts from what was disclosed, and the purported potential change in APRs represented by Brandon Carroll, constitute "adverse action" under the FCRA.  15 U.S.C. § 1681a(k).

65.     The FCRA, 15 U.S.C. § 1681m, provides that users of credit reports who take "adverse action" based on information in a consumer report are required to provide notice of the adverse action, a disclosure of the credit scores used by such person, provide the contact information of the relevant consumer reporting agency, and provide notice of the consumer's right to obtain a free credit report and dispute the accuracy of items on a credit report.  15 U.S.C. § 1691m.

66.     Neither Antioch Dodge nor Capital One provided any such notification to Plaintiffs in any medium.

67.     The FCRA provides for civil liability for willful noncompliance of actual or statutory damages, punitive damages, costs, and attorney's fees.  15 U.S.C. § 1681n.

68.     The FCRA provides for civil liability for negligent noncompliance in an amount of actual damages along with costs and attorney's fees.  15 U.S.C. § 1681o.

69.     Antioch Dodge and/or Capital One willfully, or in the alternative negligently, failed to comply with the FCRA provisions regarding adverse action.

WHEREFORE, Plaintiffs pray that this Court enter judgment against defendants and for the following relief:

a)   Actual or statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

b)   In the alternative, actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

c)   Punitive damages pursuant to 5 U.S.C. § 1681n(a)(2);

d)   Fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) or § 1681o(a)(2); and

e)   For all such other relief that is just and proper.

## COUNT IV
*Violations of the Equal Credit Opportunity Act*
*Against MakeMyDeal, Antioch Dodge, and Capital One*

70.   Plaintiffs incorporate and reallege paragraphs 1 – 69, above, as if fully set forth herein.

71.   The Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA") attempts to ensure that consumers have equal access to credit and are apprised of the fair bases for the denial of credit.

72.   MakeMyDeal is a "creditor" pursuant to the ECOA, 15 U.S.C. § 1691a(e) because it regularly arranges for the extension of credit between consumers and creditors.

73.   Antioch Dodge is a "creditor" pursuant to the ECOA, 15 U.S.C. § 1691a(e) because it extended credit to Plaintiff.

74.   Upon information and belief, Capital One is a "creditor" pursuant to the ECOA, 15 U.S.C. § 1691a(e) because it is an assignee who participated in the extension of credit based on Antioch Dodge's representations to Plaintiff.

75.   The ECOA, 15 U.S.C. § 1691, makes it unlawful to discriminate against a consumer on a variety of grounds, including national origin.

76.     Plaintiffs were susceptible to a fraudulent scheme involving the amendment of credit terms at least in part due to their national origin and that English is their second language.

77.     Furthermore, the ECOA requires that creditors provide notice to a credit applicant of "adverse action" taken within thirty days either by putting the reasons in writing or by providing a notice that the applicant is entitled to request the reasons.  15 U.S.C. § 1691(d).

78.     The change in credit terms and the amount due in the base price is "adverse action" as defined in the ECOA.

79.     MakeMyDeal, Antioch Dodge, and Capital One failed to provide Plaintiffs any sort of notice regarding the adverse action taken against them and therefore failed to comply with the ECOA.

80.     The ECOA provides for civil liability against any creditor who fails to comply with its provisions for actual damages, individual punitive damages not exceeding $10,000, costs, and attorney's fees.  15 U.S.C. § 1691e.

WHEREFORE, Plaintiffs pray that this Court enter judgment against defendants and for the following relief:

a)      Actual or statutory damages pursuant to 15 U.S.C. § 1691e(a);

b)      Punitive damages pursuant to 15 U.S.C. § 1691e(b);

c)      Fees and costs pursuant to 15 U.S.C. § 1691e(d); and

d)      For all such other relief that is just and proper.

## COUNT V
*Illinois Consumer Fraud Act*
*Against Antioch Dodge, Lee McCoy, and MakeMyDeal*

81.     Plaintiffs incorporate and reallege paragraphs 1 – 80 above, as if fully set forth

herein.

**82.**     Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act,

815 ILL. COMP. STAT. § 505/2 ("ICFA"), prohibits, *inter alia*, deceptive and unfair conduct,

including but not limited to false representations and false statements.  Section 2 of the Illinois

Consumer Fraud Act provides:

> **Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact**, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965 [815 ILCS 510/2], in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act [15 U.S.C. § 45].

(Emphasis added).

*83.*     Each Defendant named above has violated this provision by engaging in a course

of unfair consumer conduct towards Plaintiffs in the purchase of their automobile.

*Per Se Violation of Section 2J – Antioch Dodge and MakeMyDeal*

84.     Section 2J of the ICFA expressly prohibits a merchant from advertising any

statement that the goods can be paid for by periodic payments absent a representation that clearly

discloses the actual cash retail price. 815 ILCS § 505/2J.

13

85.     A violation of Section 2J is a *per se* violation of the ICFA.

86.     Antioch Dodge and MakeMyDeal represented that the car was available for sale for $15,977 with notation that it could be paid for with estimated weekly payments.

87.     However, Antioch Dodge and MakeMyDeal failed to accurately convey the actual purchase cash price of the vehicle, $18901.38.

*88.*     Antioch Dodge and MakeMyDeal therefore violated the consumer fraud act.  815 ILCS 505/2J.

*Bait and Switch – Antioch Dodge*

89.     The FTC has defined bait advertising as "an alluring but insincere offer to sell a product or service which the advertiser in truth does not intend or want to sell."  16 CFR § 238.0. The FTC regulations clearly prohibit so-called "bait and switch" advertising.  16 CFR § 238.

90.     Additionally, the FTC regulations prohibit advertising of a "former price" or "previous price" that is, in fact, fictitious.  16 CFR § 233.1.

91.     Advertising a product at a price significantly lower than the actual price due to some purported technicality or limitation is sufficient to be a "bait and switch" actionable under the law. *See Williams v. Bruno Appliance*, 62 Ill. App. 3d 219, 222 (1st Dist 1978).

92.     Antioch Dodge used the MakeMyDeal advertisement (and purported price negotiations) to bait Plaintiffs into the dealership, lock them into what they thought was a straightforward purchase of an automobile, and then increase the price and/or tack on extra products and fees.

93.     Further, if the actual price of the automobile was what appears on Plaintiffs' bill of sale, the advertised price on MakeMyDeal is blatantly fictitious.

14

*94.*    Therefore, Defendants violated the ICFA by using a bait and switch and/or fictitious price scheme.

*Fraudulent Inducement – Antioch Dodge*

95.    Antioch Dodge represented to Plaintiffs a price that was false.

96.    Antioch Dodge falsely represented to Plaintiffs that they had negotiated and agreed to purchase a vehicle.

97.    Antioch Dodge knew that these representations were false.

98.    Antioch Dodge made these representations to induce Plaintiffs to come to the dealership and purchase the vehicle for a markedly higher price than advertised.

99.    Antioch Dodge further misrepresented the truth of the documents they were signing to Plaintiffs, who are unsophisticated and do not speak English as a first language, in order to induce them to continue with the transaction.

100.    Plaintiffs reasonably relied on Antioch Dodge's representations in coming to dealership, agreeing to purchase the vehicle, and continuing with the transaction.

*101.*    Antioch Dodge's fraudulent inducement is a deception that violates Section 2 of the ICFA.

*Unfair Practices – All Defendants*

102.    The ICFA further allows for a cause of action for unfair consumer practices where a company's acts offend public policy; are immoral, unethical, oppressive, or unscrupulous; or causes substantial injury to consumers.

103.    MakeMyDeal committed unfair practices under the ICFA by (a) falsely advertising that it was facilitating negotiations with the auto dealership at a price below the

actual price offered; (b) falsely representing financing terms used in inducing Plaintiff into a

fraudulent transaction; (c) using terminology such as "offer" and "deal" to represent to

consumers that it had facilitated a sale without taking any action to enforce such deals; and (d)

representing to Plaintiffs that their "deal" was complete upon finding Lee McCoy at the

dealership, when Lee McCoy had no such intention of honoring the terms agreed upon; (e) other

violations to be proven at trial.

104.    Lee McCoy committed unfair practices under the ICFA by (a) falsely representing

on the MakeMyDeal platform that there was a "deal" when he had no intention to honor such a

deal; (b) misrepresenting the reason for the inflated amount on Plaintiffs' contract; (c) other

violations to be proven at trial.

105.    Antioch Dodge committed unfair practices under the ICFA by (a) using the

MakeMyDeal platform to represent that a "deal" had been made when it had no intention to

honor the "deal;" (b) diverting Plaintiffs from the "deal oncet hey arrived at the dealership"; (c)

adding over $3,000 to the retail price above what was advertised; (d) taking advantage of

foreign-born and non-native speakers using such a scheme; (e) other violations to be proven at

trial.

106.    All of Defendants' deceptive and unfair acts and practices occurred in the course

of trade and commerce.

107.    As a result of Defendants' unfair acts and practices, Plaintiffs have been damaged

by having to pay a higher price than anticipated for their automobile, both on an overall and a

monthly basis, in addition to emotional distress, mental anguish, stress, harassment, and

embarrassment at having been taken advantage-of due to their unsophisticated, non-native-speaker status.

WHEREFORE, Plaintiffs pray that this Court enter judgment against defendants and for the following relief:

a)    Actual damages pursuant to 815 ILCS § 505/10a;

b)    Punitive damages;

c)    Costs and fees pursuant to 815 ILCS § 505/10a(c); and

d)    For all such other relief that is just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiffs hereby demand that Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiffs, the events described herein, any third party associated with any telephone call, campaign, advertisement, account, sale or file associated with Plaintiffs, and any account or number or symbol relating to them.  These materials are likely very relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiffs demand that Defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendants.

Respectfully submitted,

By: /s/ Lance A. Raphael
One of Plaintiff's Attorneys

17

Lance A. Raphael
Craig R. Frisch
Consumer Advocacy Center, P.C.
180 West Washington, Suite 700
Chicago, IL  60602
(312) 782-5808